UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ULYSSES BROWN,

       Petitioner,

v.                           Case No. 3:18-cv-772-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

---

## ORDER

### I. Status

Petitioner Ulysses Brown, an inmate of the Florida penal system,
initiated this action on June 11, 2018,[1] by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Brown is proceeding on an
amended petition (Amended Petition; Doc 17). In the Amended Petition, Brown
challenges two 1983 state court (Duval County, Florida) judgment of
convictions for robbery with a weapon and robbery with a firearm. Brown
raises one ground for relief. See Amended Petition at 7-9.[2] Respondents have
submitted a memorandum in opposition to the Petition. See Response to

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the
Court's electronic docketing system.

Petition for Writ of Habeas Corpus (Response; Doc. 19) with exhibits (Resp. Ex.). Brown filed a brief in reply. <u>See</u> Doc. 24. This case is ripe for review.

## II. Relevant Procedural History

On August 5, 1982, the State of Florida (State) charged Brown by way of Information in Case Number 1982-CF-6820 with robbery with a deadly weapon. Resp. Ex. 3 at 9. On March 7, 1983, the State charged Brown in Case Number 1982-CF-6845 by way of Amended Information with robbery with a firearm. Resp. Ex. 3 at 48-49. Following a trial in Case Number 1982-CF-6845, a jury found Brown guilty of robbery and made a specific finding that Brown carried a firearm during the commission of the offense. <u>Id.</u> at 55. On April 25, 1983, Brown entered into a negotiated plea of no-contest in Case Number 1982-CF-6820. <u>Id.</u> at 62. That same day, the trial court sentenced Brown in both cases to a term of incarceration of 120 years in prison, with a three-year minimum mandatory sentence. <u>Id.</u> at 63-66, 68-71. The trial court retained jurisdiction over Brown in both cases for review of any Parole Commission release order for half of the sentence and it also ordered the sentences to run concurrently. <u>Id.</u> On May 2, 1983, Brown filed a motion to correct illegal sentence in both cases, in which he challenged the trial court's determination to retain jurisdiction over the case. <u>Id.</u> at 74-76, 78-80. The trial court denied the motions. <u>Id.</u> at 77, 81.

On May 10, 1983, with the assistance of counsel, Brown filed a direct appeal challenging his convictions and sentences in both cases. Id. at 83. On February 21, 1984, Florida's First District Court of Appeal (First DCA) found that the imposition of the three-year minimum mandatory in Case Number 1982-CF-6820 was improper and struck it. Resp. Ex. 7. The First DCA affirmed the convictions and sentences in all other aspects. Id.

On September 22, 1993, Brown filed a pro se motion to correct illegal sentence in both cases again arguing the trial court could not retain jurisdiction over his case for half of his sentence. Resp. Ex. 8 at 1-2. The postconviction court denied relief. Id. at 3-4. The First DCA affirmed the denial of relief and on February 10, 1995, it denied Brown's motion for rehearing. Resp. Ex. 9. Brown appealed to the Florida Supreme Court, but the court dismissed the appeal for lack of jurisdiction. Resp. Ex. 10.

Brown filed another pro se motion to correct an illegal sentence in both cases on August 13, 1996. Resp. Ex. 11 at 1-20. There, he argued the trial court incorrectly characterized both offenses as life felonies, the sentences exceeded the statutory maximum, and the trial court failed to state its justification for retaining jurisdiction. Id. The postconviction court denied relief. Id. at 31. Brown moved for rehearing, id. at 32-35, which the postconviction court denied, id. at 41. On March 27, 1997, the First DCA dismissed Brown's appeal as untimely. Resp. Ex. 12.

On June 19, 1997, Brown filed in both cases a motion to correct illegal sentence raising the same claims he previously raised in his August 13, 1996 motion. Resp. Ex. 13 at 1-19. The postconviction court denied relief, finding that Brown previously raised the claims in his prior motion. Id. at 20-21. On December 30, 1997, the First DCA affirmed the denial of relief in a written opinion but struck the portion of the order that barred Brown from filing any more motions to correct an illegal sentence. Resp. Ex. 14. The First DCA issued the Mandate on January 15, 1998. Id.

On February 11, 1998, Brown filed a petition for writ of habeas corpus with the First DCA asserting ineffective assistance of appellate counsel in the appeal of Case Number 1982-CF-6845. Resp. Ex. 15 at 1-24. He argued his appellate counsel was deficient for failing to raise a claim that the trial court erred by refusing to give an instruction on attempted armed robbery and erred by denying Brown's motion for new trial, as well as failing to raise claims of prosecutorial misconduct. Id. On April 6, 1998, the First DCA denied relief on the petition. Resp. Ex. 16.

On August 31, 1998, Brown filed a pro se petition for writ of habeas corpus with the Florida Supreme Court. Resp. Ex. 17 at 1-33. In the petition, he alleged that section 923.03, Florida Statutes, the statute authorizing the trial court's continued jurisdiction over Brown's sentences in both cases, was unconstitutional. Id. On November 3, 1998, the Florida Supreme Court denied

the petition on the merits. Resp. Ex. 18. On February 2, 2000, Brown refiled the same petition in both criminal cases. Resp. Ex. 19 at 1-25. The postconviction court ordered Brown to show cause why the petition should not be deemed frivolous and why sanctions should not be imposed. Id. at 43-45. Following Brown's response, id. at 46-52, on October 9, 2000, the postconviction court dismissed the petition as procedurally barred, without recommending sanctions, id. at 53-54. Brown moved for rehearing, id. at 55-59, which the postconviction court denied, id. at 60. Brown appealed, but later moved to voluntarily dismiss the appeal, and the First DCA dismissed Brown's appeal on October 26, 2001. Resp. Ex. 20.

On March 1, 2000, Brown submitted a letter to the postconviction court in both cases requesting that his presentence investigation report (PSI) be unsealed. Resp. Ex. 21 at 1-6. The postconviction court denied the request on March 14, 2000. Id. at 10-11. The First DCA dismissed Brown's appeal of the denial of this request for lack of prosecution and denied his motion for rehearing on May 25, 2001. Resp. Ex. 22.

Unsuccessful in obtaining relief through his criminal cases, on August 21, 2000, Brown filed a civil complaint arguing that his convictions and sentences in both criminal cases were obtained by extrinsic fraud. Resp. Ex. 23 at 1-20. The circuit court dismissed the complaint, finding Brown's claims should have been raised in a postconviction motion in his criminal cases. Id. at

36-37. On December 18, 2001, the First DCA per curiam affirmed the dismissal of the complaint without a written opinion and on January 15, 2002, it issued the Mandate. Resp. Ex. 26.

Returning to the criminal cases, on January 6, 2002, Brown filed a pro se motion for correction of sentence in both cases and later supplemented and amended the motion. Resp. Ex. 27 at 1-56. Brown argued that the trial court erred in retaining jurisdiction over his cases and his sentences exceeded the statutory maximum. Id. The postconviction court denied the motion as procedurally barred. Resp. Ex. 28 at 145-46. The First DCA per curiam affirmed the denial of relief on November 23, 2004, and issued the Mandate on December 21, 2004. Resp. Ex. 29.

 On July 7, 2006, Brown again filed in both cases a pro se request to unseal his PSI. Resp. Ex. 30 at 1-3. The postconviction court denied relief, noting Brown previously had filed such a request that was denied. Id. at 4-5. On December 13, 2007, the First DCA per curiam affirmed the denial of relief and on January 8, 2008, it issued the Mandate. Resp. Ex. 35.

Brown filed a pro se motion to vacate his convictions and sentences in both cases on October 30, 2006. Resp. Ex. 36 at 1-31. In the motion, he alleged his sentences were improperly imposed as a result of mistakes in the PSI. Id. The postconviction court denied the motion. Id. at 99-101. Brown moved for rehearing, id. at 116-22, which the postconviction court denied, id. at 146-47.

The First DCA per curiam affirmed the denial of the motion without a written opinion on August 7, 2008, and issued the Mandate on September 3, 2008. Resp. Ex. 39.

Brown filed a pro se petition for writ of habeas corpus in Florida's Third Judicial Circuit on February 18, 2008, that was later transferred to the Fourth Judicial Circuit. Resp. Ex. 41 at 1-10. In the petition, Brown contended that the trial court lacked jurisdiction in both cases. Id. On March 13, 2008, a civil circuit court judge in the Fourth Circuit denied Brown's petition for writ of habeas corpus. Resp. Ex. 40 at 1-2. The court also denied Brown's motion for rehearing. Id. at 9-10. On November 17, 2009, the First DCA affirmed the denial of the petition, and following an order to show cause, sanctioned Brown for his "incessant initiation of [frivolous] proceedings" and prohibited him from filing pro se pleadings in the First DCA related to his conviction and sentences in both cases. Resp. Ex. 42. On December 15, 2009, the First DCA issued the Mandate. Id. Undeterred, Brown continued to file pro se pleadings with the First DCA, which led the First DCA on August 10, 2017, to recommend to the Florida Department of Corrections (DOC) that it institute disciplinary proceedings against Brown. Resp. Ex. 43.

On October 3, 2011, Brown filed a pro se motion to correct illegal sentence in Case Number 1982-CF-6820. Resp. Ex. 44. In the Motion, Brown alleged that the three-year minimum mandatory sentence was illegal, and the

trial court erred in retaining jurisdiction over the case. Id. Brown amended the motion on July 10, 2015, filing it in both cases, and argued only that the trial court erred in retaining jurisdiction over the cases. Resp. Ex. 45. On June 12, 2017, the postconviction court struck the original motion as moot and granted the amended motion as to Case Number 1982-CF-6820 but denied relief as to Case Number 1982-CF-6845. Resp. Ex. 46. Pursuant to the order, the postconviction court relinquished "jurisdiction over the sentence in Case Number 82CF-6820 as the sentence was to run concurrent with the sentence in Case Number 82CF-6845." Id. Brown moved for rehearing in Case Number 1982-CF-6820, Resp. Ex. 47, which the postconviction court denied, Resp. Ex. 48.

On September 27, 2012, Brown moved for leave to file a pro se petition for writ of habeas corpus with the First DCA. Resp. Ex. 49. The First DCA issued an order to show cause why sanctions should not be imposed. Resp. Ex. 50. Following his response, on December 19, 2012, the First DCA dismissed the petition and recommended the DOC institute disciplinary proceedings against Brown. Resp. Ex. 51. The First DCA denied Brown's motion for rehearing on January 31, 2013. Resp. Ex. 52. Brown appealed to the Florida Supreme Court, Resp. Ex. 53, but the court dismissed the appeal for lack of jurisdiction. Resp. Ex. 56.

Brown filed a pro se petition for writ of habeas corpus directly with the Florida Supreme Court on October 3, 2014. Resp. Ex. 57. In the pro se petition, he again argued the trial court erred in retaining jurisdiction over his cases. Id. On December 15, 2014, the Florida Supreme Court denied the petition as procedurally barred. Resp. Ex. 58.

Undeterred, On February 12, 2015, Brown sought to obtain relief through a "next friend" Gladys Barrington (a non-lawyer). Resp. Ex. 60. Barrington filed a petition for writ of habeas corpus seeking to argue the trial court erred in retaining jurisdiction over Brown's cases. Resp. Ex. 59. The First DCA denied Barrington's motion to proceed as "next friend" and dismissed the petition in accordance with its prior order banning Brown from filing pleadings not signed by a Florida attorney. Resp. Ex. 61.

In Case Number 1982-CF-6820, Brown filed a pro se motion to withdraw plea on October 24, 2016. Resp. Ex. 62. He argued that the trial court improperly retained jurisdiction over both his cases. Id. The circuit court dismissed the motion as untimely on November 2, 2016. Id.

Brown filed yet another pro se motion to correct illegal sentence in both cases on July 12, 2017, in which he argued that the postconviction court erred by resentencing him on June 12, 2017, without him being present. Resp. Ex. 63. The postconviction court denied relief on the motion on August 11, 2017. Resp. Ex. 64. On April 26, 2018, Brown filed a "revised" motion to correct illegal

sentence in both cases, raising the same issue of being resentenced in absentia and also contending that the postconviction court erred in not allowing him to select a guidelines sentence. Resp. Ex. 65. The postconviction court again denied relief and also cautioned Brown that he would face sanctions if he continued to file frivolous pleadings. Resp. Ex. 66.

On October 16, 2018, Brown filed a pro se motion requesting the postconviction court to enter a new judgment and sentence document in Case Number 1982-CF-6820. Resp. Ex. 67. On October 25, 2018, the postconviction court granted the motion and directed the Clerk to remove from the judgment and sentence the three-year minimum mandatory and retention of jurisdiction provisions. Resp. Ex. 68. The Clerk complied and modified the judgment and sentence document accordingly, with notations indicating the modification to the minimum mandatory term was nunc pro tunc to April 26, 1984, and the modification to the retention of jurisdiction provision was nunc pro tunc to June 12, 2017 . Resp. Ex. 69.

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents contend that the Amended Petition is untimely to the extent it challenges Case Number 1982-CF-6845.[3] Response at 2-30. Brown

---

[3] Respondents concede that, "due to a new, intervening judgment rendered October 31, 2018, Petitioner's amended § 2254 petition dated December 28, 2018 is timely with respect to case number 1982-CF-6820[.]" Response at 3. Notably, the record reflects that on October 25, 2018, the postconviction court directed the Clerk to modify the judgment and sentence in Case Number 1982-CF-6820 but did not do the same in Brown's other case. Resp.

alleges in a conclusory manner in the Amended Petition that it is timely. Amended Petition at 14. In his Reply, he does not directly address the timeliness of the Amended Petition other than to contend that Respondents are trying to defeat his meritorious claim via technicalities. See generally Reply.

As Brown's convictions and sentences became final before the April 24, 1996 effective date of AEDPA, the one-year limitations period in Brown's case began to run on April 24, 1996, and expired on April 24, 1997. See Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) ("The limitations period would have ended on April 24, 1997, the anniversary date of the triggering event, which was AEDPA's effective date."). Accordingly, as Brown initiated this action on June 11, 2018, the Amended Petition is due to be dismissed as untimely unless he can avail himself of the statutory provisions which extend or toll the limitations period.

The record demonstrates that on the day the statute of limitations began, Brown did not have any pending motion that would have tolled the statute of limitations. On August 13, 1996, after 110 days of the statute of limitation had passed, Brown filed a motion to correct an illegal sentence that tolled the

---

Exs. 1; 2; 46. Accordingly, the postconviction court did not enter a new judgment from which to calculate the limitations period in Case Number 1982-CF-6845.

limitations period. Resp. Ex. 11 at 1-20. As Brown's appeal of the denial of this motion was dismissed as untimely, Resp. Ex. 12, the statute of limitations period began to run again thirty days from August 30, 1996, the date the postconviction court denied it, which mean the limitations period restarted on September 30, 1996.[4] As 110 days had already passed, Brown had 255 days left to file a timely petition. Brown did not file any collateral motions in state court during those 255 days, and the statute of limitations expired on June 12, 1997. Although Brown filed a pro se motion on June 19, 1997, Resp. Ex. 13 at 1-19, by then the limitations period had expired. Brown has failed to allege equitable tolling or that he is actually factually innocent. Accordingly, in light of the above analysis, this action is untimely as to Brown's conviction and sentence in Case Number 1982-CF-6845 and the Amended Petition is due to be dismissed, in part, as untimely.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations,

---

[4] The thirtieth day fell on September 29, 1996, but since that day was a Sunday, Brown had until the next business day to file.

which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Brown's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is

"'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.

> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v.
> Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
> L.Ed.2d 356 (2015). Whatever that "precise
> relationship" may be, "'a state-court factual
> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'"[5] Titlow, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.

Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited

to the record that was before the state court that adjudicated the claim on the

merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language

in § 2254(d)(1) "requires an examination of the state-court decision at the time

it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme

> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan
> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality
> of a state prisoner's conviction and sentence are guided
> by rules designed to ensure that state-court judgments
> are accorded the finality and respect necessary to
> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine
> of procedural default, under which a federal court will
> not review the merits of claims, including
> constitutional claims, that a state court declined to
> hear because the prisoner failed to abide by a state
> procedural rule. See, e.g., Coleman,[6] supra, at 747–
> 748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S.
> Ct. 2497. A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes federal
> review of the claims if, among other requisites, the
> state procedural rule is a nonfederal ground adequate
> to support the judgment and the rule is firmly
> established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558
> U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417
> (2009). The doctrine barring procedurally defaulted

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[8] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## VI. Findings of Fact and Conclusions of Law

In the Amended Petition, Brown contends that "the trial court violated his right to due process and representation of counsel as guaranteed and

protected under the 14th and 6th Amendments of the United States Constitution when said court re-sentenced Petitioner in his absence and without counsel[.]" Amended Petition at 7. The resentencing to which Brown refers occurred on June 12, 2017, when the postconviction court granted Brown's July 10, 2015 motion to correct an illegal sentence in Case Number 1982-CF-6820. Resp. Ex. 46. In that order, the postconviction court relinquished "jurisdiction over the sentence in Case Number 82CF-6820 as the sentence was to run concurrent with the sentence in Case Number 82CF-6845." Id. Brown contends this was a resentencing at which he had a constitutional right to be present and represented by counsel. Amended Petition at 7-8. According to Brown, this constituted a resentencing because the state court had "judicial discretion as to the new sentences" and the retention of jurisdiction provision was a term of his negotiated plea agreement. Id. at 7.

Respondents contend this claim is unexhausted because even though Brown raised a similar claim in state court, he did not appeal the denial of the claim to the First DCA, thus they argue he did not invoke one complete round of Florida's established appellate review process. Response at 39-49. In the Amended Petition, Brown contends that he could not appeal the denial of relief on this claim because the First DCA barred him from filing pro se pleadings related to both his criminal convictions at issue here. Amended Petition at 5-7, 9. Respondents counter, however, that the reason he was barred from filing

is due to his own conduct, namely the filing of frivolous pleadings and abusing the process. Response at 45-49. As such, Respondents argue that Brown's failure to exhaust cannot be excused by the First DCA's decision to require any pleadings from Brown challenging his criminal convictions to be signed by a Florida attorney. Id.

The Court agrees with Respondents that the First DCA's decision to bar Brown from filing pro se pleadings does not constitute cause to overcome his failure to exhaust this claim. See Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004) (holding that "to show cause for procedural default, Lynn must show that some objective factor external to the defense prevented Lynn or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to Lynn's own conduct."); Claudio v. Sec'y, DOC, No. 3:13-CV-178-J-39JRK, 2015 WL 5996932, at *9 (M.D. Fla. Oct. 14, 2015) ("Again, his failure [to exhaust] is not excused as it was his own conduct which resulted in the state courts banning further pro se pleadings, a sanction which the state courts are specifically authorized to undertake."). As detailed above, after repeatedly filing frivolous pleadings, the First DCA gave Brown an opportunity to challenge the imposition of sanctions and, after failing to show good cause, the First DCA banned him from filing pro se. Notably, this ban did not prevent Brown from pursuing an appeal at all, it only prevented him from doing so without the assistance of counsel. Accordingly, Brown still had the opportunity

to fully exhaust this claim and his failure to be able to do so as a pro se litigant is entirely attributable to his own abusive conduct. Moreover, Brown has presented no evidence that he is actually factually innocent. As Brown has failed to establish cause or his actual innocence, this claim is due to be denied as unexhausted.

Nevertheless, even if properly exhausted, Brown would not be entitled to relief. Sentencing is a critical stage of criminal proceedings, at which a defendant is entitled to be present and to have appointed counsel. See Mempa v. Rhay, 389 U.S. 128, 134 (1967); Gardner v. Florida, 430 U.S. 349, 358 (1967). However, the United States Supreme Court has not extended this holding to the modification of a sentence following the granting of a collateral motion. Accordingly, it cannot be said that the state court's ruling was contrary to or an unreasonable application of clearly established federal law. See Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003) (recognizing that a state court decision cannot be contrary to clearly established federal law "where no Supreme Court precedent is on point."). Accordingly, Brown is not entitled to federal habeas relief.

Moreover, although the United States Supreme Court has not spoken on this issue, the Eleventh Circuit has long held that "there is a distinction between modifications of sentences and proceedings that impose a new sentence after vacation of the original sentence." United States v. Taylor, 11

F.3d 149, 152 (11th Cir. 1994). "In the former instance, the defendant's presence is not required, but in the latter, the defendant has a right to be present[.]" Id.; see also United States v. Jackson, 923 F.2d 1494, 1497 (11th Cir. 1991) ("In constitutional terms, a remedial sentence reduction is not a critical stage of the proceedings; so, the defendant's presence is not required."). Likewise, in Florida, where the resentencing is ministerial and a court has no discretion in imposing sentence, the defendant's presence is not required. Jordan v. State, 143 So. 3d 335, 338-39 (Fla. 2014). Here, the granting of Brown's motion to correct did not result in the vacating of his original sentence nor did it change the duration of his sentence. Instead, it merely removed a provision giving the state court jurisdiction over half of his sentence to review orders from the Parole Board. Accordingly, neither under Eleventh Circuit nor Florida precedent was Brown entitled to be present with counsel when the state court modified his sentence. In light of the above analysis, Brown is not entitled to federal habeas relief and the Amended Petition is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brown seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make

this substantial showing, Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 17) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.     If Brown appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of April, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:     Ulysses Brown #089244
       Counsel of record